**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:26-cv-20803-RKA**

SYDNEY BOSMANS,

Plaintiff,

v.
GENERAL ELECTRIC COMPANY; GE AEROSPACE; BOMBARDIER, INC.; BOMBARDIER AEROSPACE CORP; TURBINE ENGINE SPECIALISTS, INC.; DUNCAN AVIATION, INC., GE ENGINE SERVICES, LLC,

Defendants.
_______________________________________/

**DEFENDANTS TURBINE ENGINE SPECIALISTS, INC., GE AEROSPACE, AND GE ENGINE SERVICES' MOTIONS TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Defendant Turbine Engine Specialists, Inc. ("TES") moves to dismiss Plaintiff's claims for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Defendants General Electric Company d/b/a GE Aerospace ("GE Aerospace")[1] and GE Engine Services ("GEES") (collectively "GE") move to dismiss the product liability claims stated in Counts I-IV and XI-XII of Plaintiff's Complaint (ECF No. 1) with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), the federal General Aviation Revitalization Act ("GARA"), and, in the alternative, Florida Statute § 95.031(b)(3).

## I. FACTUAL BACKGROUND

### A. The Accident

On February 9, 2024, Ace Aviation Services d/b/a Hop-A-Jet was operating a contracted charter flight when it was involved in an accident on the southbound lanes of Interstate-75 in Naples, Florida. Compl. ¶¶ 3, 81–82. Plaintiff, who was working on the plane as a flight attendant, alleges that she sustained injuries in the accident. *Id.* at ¶ 4.

### B. The Subject Aircraft

The aircraft involved in the instant accident (the "Subject Aircraft") was a Bombardier Challenger 604 powered by two GE Aerospace CF34-3B engines. Compl. ¶ 3. The Bombardier Challenger 604 was certified as airworthy by the Federal Aviation Administration ("FAA") on May 31, 1995. Ex. 1, Type Certificate A21EA at 6 (Rev. 51 Sept. 2024).[2]

---

[1] The Complaint improperly names GE Aerospace as a separate defendant from General Electric Company. GE Aerospace is a business unit of General Electric Company and, therefore, has no independent corporate identity.

[2] The Court can consider public records on a motion to dismiss. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (finding it proper to consider public records on a motion to dismiss because they were "not subject to reasonable dispute" because they were "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned"); *Bouton v. Ocean Props., Ltd.*, 201 F. Supp. 3d 1341, 1345 (S.D. Fla. 2016) ("A court properly

Public records for the Subject Aircraft show that it was first delivered to lessee Suzuki del Caribe, the authorized dealer of Suzuki vehicles in Puerto Rico, on January 31, 2005. Ex. 2, FAA Certified Aircraft Records at FAA-0000000031 and -69[3] (reflecting the delivered date and that Lessee has inspected and confirms receipt of the Subject Aircraft).

**C. <u>Turbine Engine Specialists</u>**

Turbine Engine Specialists is a Texas corporation with its principal place of business in Texas, as Plaintiff readily concedes. Compl. ¶ 12.

Turbine Engine Specialists provides aviation maintenance services specific to business aircraft engines and auxiliary power units. Ex. 3, Decl. of D. Yamada ¶ 8. Turbine Engine Specialists was founded in 2001, and is incorporated in Texas. *Id.* ¶ 5. Turbine Engine Specialists' principal place of business is in Fort Worth, Texas. *Id.* ¶ 6. It has never been incorporated in Florida nor has it had a principal place of business in Florida. *Id.* ¶ 7. Turbine Engine Specialists has never had offices, warehouses, hangars, or any physical facilities in Florida. *Id.* ¶ 11.

The only contact TES had with the subject aircraft or its engines, a Challenger 604, Serial No. 5584, took place in Dallas, Texas in 2019. *Id.* ¶ 12. On or about February 18, 2019, TES was contacted by Bombardier and asked to perform a 3200-hour borescope inspection of both engines of the subject aircraft at Bombardier's facility in Dallas, Texas. The work began on or about February 25, 2019 and concluded on or about March 20, 2019. *Id.* ¶ 13. The entirety of TES'

---

takes judicial notice of relevant public records in deciding a motion to dismiss, and consideration of such documents does not convert a motion to dismiss into one for summary judgment").

[3] The lease agreement cited herein is contained within the "aircraft file as of July 27, 2025, pertaining to Bombardier Inc. CL-600-2B16, serial number 5584, registration N823KD, on file in the Aircraft Registration Branch, Federal Aviation Administration." Ex. 2, FAA Certified Aircraft Records at FAA-000000001. The accuracy of the records has been attested to by Ms. S. Lynn Tampas, the legal custodian of said records, and the records have been certified by the Department of Transportation. *Id.*

borescope inspection of the subject aircraft's engines took place at Bombardier's facility located at 7336 Aviation Place, Dallas, TX 75235. The TES technician who performed the work was named Ted Shannon. Mr. Shannon was a Fort Worth, Texas domiciled employee of TES. Darren Yamada, another Fort Worth, Texas domiciled employee of TES, provided some additional work on the engine inspection on or about March 6, 2019 in Texas. *Id.* ¶ 14. TES has no record of any contact with whoever the owner and/or lessor of the subject aircraft was in 2019. *Id.* ¶ 15.

TES has no record of ever servicing or coming into contact with the subject aircraft or its engines after the single borescope inspection in 2019 in Dallas, Texas. As such, TES has never had any contact with or provided any service to the subject aircraft in Florida. *Id.* ¶ 16. TES has no record of ever having any specific contact about this subject aircraft with the current owner. *Id.* ¶ 17. TES has no record of having any contracts or agreements with the present owner of the subject aircraft regarding the subject aircraft. *Id.* ¶ 18.

TES has no bank accounts in the State of Florida. *Id.* ¶ 19. TES does not own or lease any property in the State of Florida. *Id.* ¶ 20. TES does provide field service work on aircraft in Florida when requested by various customers. *Id.* ¶ 21. TES has approximately 120 employees. Out of the total number, only three TES employees, Alan Rosamond, Jonathan Murphy, and Dale Ferrer currently reside in Florida. Alan Rosamond is a field service technician and first joined TES in 2023. Jonathan Murphy is also a field service technician and first joined TES in 2024. Dale Ferrer joined TES in 2025. Neither Mr. Rosamond, nor Mr. Murphy, nor Mr. Ferrer worked on the subject aircraft. *Id.* ¶ 22. TES had at least one, but not more than three employees residing in Florida in 2019. TES employees in Florida are mobile. They are not based at any specific facility or premises in Florida. Field technicians residing in Florida perform maintenance services at locations dictated by customer needs. *Id.* ¶ 23.

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

Florida applies the two-part test of *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989) to assess personal jurisdiction. Under *Venetian Salami*, a court must first determine whether sufficient jurisdictional facts exist to bring the action within the ambit of Florida's Long-Arm Statute. *Id.* at 501–02. This may be met by establishing either general or specific jurisdiction. *Teva Pharm. Indus. v. Ruiz*, 181 So. 3d 513, 517 (Fla. 2d DCA 2015). General jurisdiction exists only where a defendant's affiliations with the state are so "continuous and systematic" as to render it essentially "at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)). Specific jurisdiction requires pleading specific, non-conclusory facts showing that the defendant's conduct falls within one or more subsections of Florida Statute section 48.193. *Highland Stucco & Lime Products, Inc. v. Onorato*, 259 So. 3d 944, 948 (Fla. 3d DCA 2018). If Plaintiff satisfies the first statutory prong, the court must determine whether the exercise of jurisdiction comports with federal due process. However, where the plaintiff fails to allege facts bringing the defendant within the scope of the long-arm statute, the inquiry ends, and the court "need not consider the minimum contacts aspect." *Rautenberg v. Falz*, 193 So. 3d 924, 930 (Fla. 2d DCA 2016). If the plaintiff fails to meet the first prong of the *Venetian Salami* test, by not tracking the statute or alleging facts fitting within its enumerated subsections, the court's inquiry ends and it "need not consider the minimum contacts aspect." *Rautenberg*, 193 So. 3d at 930. As to the second minimum contacts prong, "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citing *Posner v. Essex Ins. Co., Ltd.*,

178 F.3d 1209, 1214 (11th Cir. 1999)). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id.* (quoting *Meier*, 288 F.3d at 1269). Plaintiff is required to substantiate its jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint. *Polski Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986).

**B. <u>Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If a statute of repose applies, there is no claim at all and it is appropriate to dismiss for failure to state a claim." *In re Brit. Am. Ins. Co. Ltd.*, 607 B.R. 753, 756 (Bankr. S.D. Fla. 2019). A court "should dismiss a claim when it is apparent from the face of the complaint that the claim is barred by an applicable statute of repose." *Perez v. Carbonell*, No. 4:22-CV-84-WS/MJF, 2022 WL 22286838, at *2 (N.D. Fla. Oct. 6, 2022), *report and recommendation adopted*, No. 4:22CV84-WS/MJF, 2022 WL 22286834 (N.D. Fla. Nov. 9, 2022). "A statute of repose acts as an absolute bar on a defendant's temporal liability." *Id*. (internal quotation marks and citation omitted). That is, "a statute of repose puts an outer limit on the right to bring a civil action based on the date of the last culpable act or omission of the defendant, whether or not an injury even occurred or was discovered." *Id.*

## III. THERE IS NO PERSONAL JURISDICTION OVER TES

The Plaintiff alleges that Turbine Engine Specialists "transact[s] continuous, systematic and substantial business in Palm Beach County, Florida, through its operation of a field service program that employs Florida based technicians and mechanics who specialize in maintaining,

troubleshooting, inspecting, and repairing jet aircraft engines, including those at issue in this lawsuit. Defendant Turbine Engine Specialists committed a tort in Florida." Compl. ¶ 12. Plaintiff alleges in a conclusory manner that Turbine Engine Specialists "committed a tort in Florida," but does not otherwise specifically cite to any of the provisions of Florida's long arm statute. In fact, the remaining and limited jurisdictional allegations are entirely conclusory and insufficient to establish any personal jurisdiction over Turbine Engine Specialists.

### A. Plaintiff fails to plead a prima facie case of personal jurisdiction against Turbine Engine Specialists, and this Court can dismiss without having to reach the issues of Florida's long-arm statute or Constitutional concerns

The pleading standards enunciated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply to a motion to dismiss for lack of personal jurisdiction, meaning "the facts in the complaint used to meet the threshold requirement of pleading a prima facie case must be more than mere statements providing 'labels and conclusions' or 'formulaic recitation of the elements of jurisdiction.'" *Medlink Legal Sys., LLC v. QIMA Ltd.*, 2025 WL 2155099, *6 (S.D. Fla. July 29, 2015) (quoting *Storms v. Haugland Energy Grp., LLC*, 2018 WL 4347603, *2 (S.D. Fla. Sept. 4, 2018) (surveying case law)). Vague and conclusory allegations as to personal jurisdiction do not suffice for a plaintiff to establish a prima facie case. *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. 3d DCA 2021).

If the plaintiff cannot meet the initial pleading burden, the motion to dismiss should be granted. *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 849 (11th Cir. 2020); *see also Rollet v. de Bizemont*, 159 So. 3d 351, 355 (Fla. 3d DCA 2015) ("If the complaint does not allege a sufficient basis to assert long-arm jurisdiction over the defendant, the court need not reach the issue of whether the defendant has the requisite minimum contacts with the state.").

Plaintiff's jurisdictional allegations are wholly lacking. Plaintiff makes conclusory allegations like Turbine Engine Specialists "transact[s] continuous, systematic and substantial

business in Palm Beach County, Florida, through its operation of a field service program that employs Florida-based technicians and mechanics who specialize in maintaining, troubleshooting, inspecting, and repairing jet aircraft engines, including those at issue in this lawsuit. Defendant Turbine Engine Specialists committed a tort in Florida." Compl. ¶12. Plaintiff's allegations represent mere legal conclusions without any additional factual detail. Plaintiff does not allege any specific factual allegations that would serve as a basis for personal jurisdiction as to Turbine Engine Specialists under Florida's long-arm statute. Plaintiff does not clarify whether she travels under a specific personal jurisdiction theory, a general personal jurisdiction theory, or both. Plaintiff alleges that Turbine Engine Specialists conducted an inspection of the aircraft in March 2019. Plaintiff conveniently omits where this inspection occurred given that it occurred in Texas, not Florida.

### B. Turbine Engine Specialists is not subject to specific personal jurisdiction in Florida because Plaintiff's claims against it do not relate and/or are not connected to any of Turbine Engine Specialists' Florida-based contacts

Florida law provides for "specific" and "general" jurisdiction. *See* § 48.193(1)(a),(2), Fla. Stat. (2022). Specific jurisdiction "is based on the cause of action arising out of a defendant's certain minimum contact with the state." *Fincantieri-Cantieri Navali Italiani, S.P.A. v. Yuzwa*, 241 So. 3d 941, 942 (Fla. 3d DCA 2018). "General jurisdiction is based purely on a defendant's contacts with the forum state, regardless of where the cause of action arises." *Id.* "There must be an 'affiliation between the forum and the underlying controversy, principally an activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919). That the plaintiff was injured in Florida, standing alone, is not enough to confer personal jurisdiction over the foreign defendant. *See Imerys Talc. Am., Inc. v. Ricketts*, 262 So. 3d 799, 805 (Fla. 4th DCA 2018); *see also Asahi Metal Indus., Ltd. v. Superior Ct. of Cal.*, 480 U.S.

102 (1987). Florida Statute Section 48.193(1)(a) "lists several specific acts that could subject a nonresident defendant to personal jurisdiction in Florida, provided that the plaintiff's cause of action 'arises from' the specified acts." *Fincantieri-Cantieri Navali Italiani, S.P.A.*, 241 So. 3d at 945. Plaintiff fails to point to any of them except for the conclusory allegation that Turbine Engine Specialists committed a tort in Florida— an allegation belied by the fact that the borescope inspection conducted by Turbine Engine Specialists took place in Texas. Further, the Florida long-arm statute must be strictly construed in favor of a nonresident defendant. *Navas v. Brand*, 130 So.3d 766, 770 (Fla. 3d DCA 2014).

Before even reaching the question of whether the court enjoys specific jurisdiction under Federal due process analysis, the court must first address specific jurisdiction under the Florida long arm statute. Florida's long arm statute requires "connexity"—"a causal connection between the defendant's activities in Florida and the plaintiff's cause of action." *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 552 (Fla. 2d DCA 2017). Connexity under Florida's long arm statute requires a "direct affiliation, nexus, or substantial connection…between the business venture and the asserted cause of action." *Boney v. Carnival Corp.*, 2009 WL 10712207 at *3 (S.D. Fla. Oct. 29, 2009). The defendant's conduct must occur in Florida and the plaintiff's cause of action must arise from such Florida activity. *Daher Aerospace S.A. v. Blackford*, 415 So. 3d 1088, 1092 (Fla. 4th DCA 2025).

Plaintiff's second hurdle assuming for sake of argument that she can establish specific personal jurisdiction under Florida's Long Arm Statute is showing that the court also enjoys specific personal jurisdiction based upon the 14th Amendment due process clause. Under the federal analysis, specific personal jurisdiction "focuses on the relationship among the defendant, the forum state, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 291 (2014). To establish

specific personal jurisdiction, the "relationship must arise out of contacts that the defendant himself creates with the forum state." *Id.* at 1122. "The connection must arise out of the defendant's own activities, not those of the plaintiff or a third party." *See Ricketts*, 262 So. 3d at 802–03.

"The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*, 592 U.S. 351, 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). For instance and unlike this case, in *Ford Motor Co.*, the U.S. Supreme Court found specific personal jurisdiction over Ford where it "extensively promoted, sold, and serviced" allegedly defective automobiles in the forum state despite them being manufactured elsewhere. *Id.* at 371. Turbine Engine Specialists has no such contacts with Florida nor does anything Plaintiff challenges about Turbine Engine Specialists' conduct have anything to do with Florida.

Plaintiff's causes of action lack connexity with Turbine Engine Specialists' scant Florida contacts under Florida's Long Arm Statute. Plaintiff claims that Turbine Engine Specialists' 2019 borescope inspection was negligent. That inspection occurred in Texas. Turbine Engine Specialists had no Florida-based contact with the subject aircraft or its engines or the Plaintiff regarding the subject aircraft or its engines. Plaintiff's cause of action against Turbine Engine Specialists arises entirely from its actions in Texas only. The 2019 inspection was performed by Texas-based employees in Texas. That the aircraft crashed in Florida is not enough, standing alone, to confer personal jurisdiction over Turbine Engine Specialists because that fact is purely random and fortuitous. Plaintiff fails to establish any specific, personal jurisdiction over Turbine Engine Specialists under Florida's Long Arm Statute.

For the same reasons, Plaintiff cannot establish personal jurisdiction under the federal due process analysis either. The relationship between the defendant, the forum, and the litigation is

impermissibly tenuous in this case as it relates to Turbine Engine Specialists. The case against Turbine Engine Specialists does not arise from or relate to any mass production and distribution of a product. The case allegedly stems from a single service interaction with an aircraft's engines in 2019 that took place in Texas.

### C. Turbine Engine Specialists is not subject to general personal jurisdiction because it does not have contacts with Florida so continuous and systematic as to render it essentially at home in Florida and the exercise of personal jurisdiction over it in this case would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution

"Under Florida's long-arm statute, a nonresident is subject to general jurisdiction by 'engaging in substantial and not isolated activity' in Florida, regardless of whether the plaintiff's claims arose from that activity." *Jastrejembskaia v. inCruises, LLC*, 2024 WL 5244786, *5 (11th Cir. Dec. 30, 2024) (quoting Fla. Stat. §48.193(2)). The reach of section 48.193(2), Florida Statutes, extends to the limits of personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment. *Carmouche v. Tamborlee Mmgt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). The inquiry becomes co-extensive to whether the exercise of personal jurisdiction is within "constitutional bounds." *Id.*

A court can exercise general jurisdiction over foreign corporations without offending due process when the corporation's contacts with the forum state are "so 'continuous and systematic' as to render them essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "'[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there,' primarily a company's state of incorporation or principal place of business." *inCruises, LLC*, 2024 WL 5244786 at *5 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "Absent these affiliations, a corporation may be subject to general jurisdiction only in 'exceptional' cases, such as when its operations in a state are so significant that they effectively render the corporation at home in that state, or constitute the

corporation's 'principal, if temporary place of business.'" *Id.* (quoting *Carmouche*, 789 F.3d at 1204-05). General jurisdiction over a foreign corporation will not lie "unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1205.

*Daimler* and its progeny make clear that general personal jurisdiction exists outside of a corporation's place of incorporation and principal place of business only in exceptionally limited circumstances. *Daimler*, 571 U.S. at 129. The only known exception is the case *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). During World War II, Benguet stopped its mining operations in the Philippines and the president of the company moved to the State of Ohio, where "he kept an office, maintained the company's files, and oversaw the company's activities." *Daimler*, 571 U.S. at 129–30. In *Perkins*, Ohio became Benguet's "principal, if temporary, place of business" and because Ohio became the principal place of business, the Supreme Court found that "Ohio courts could exercise general jurisdiction over Benguet without offending due process." *Id.*

The Supreme Court's opinion in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984), is instructive here as well. In *Helicopteros*, the Supreme Court found that Texas did not have general personal jurisdiction over a Colombian helicopter company following a helicopter crash. The helicopter company's contacts with Texas included sending its chief executive to Texas to negotiate a contract, accepting checks drawn on Texas banks, purchasing millions of dollars of helicopter parts and equipment in Texas, and sending its pilots and other personnel to Texas for training and consultation. *Id.* at 415. The Supreme Court held that these contacts were not continuous and systematic business contacts with the forum State to support general personal jurisdiction. *Id. Helicopteros* made it clear that "unilateral activity of another

party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Id.*

*Charlie Fowler Evangelistic Ass'n, Inc. v. Cessna Aircraft Co.*, 911 F.2d 1564 (11th Cir. 1990), is also similar to this case. A Mississippi aircraft service company performed service on an aircraft in Mississippi before a return trip to Florida. The aircraft service company found a problem with a fuel pressure sensor wire. It soldered the wire, and the aircraft started without difficulty. *Id.* On approach to Panama City, Florida, the engine quit and the aircraft crashed. *Id.* The Plaintiff alleged that the aircraft service company negligently repaired the aircraft, and was subject to personal jurisdiction in Florida. *Id.* at 1565.

The Eleventh Circuit affirmed the dismissal of aircraft service company for lack of personal jurisdiction. That the aircraft service company knew the aircraft was flying back to Florida was not sufficient contacts with Florida for purposes of personal jurisdiction. The aircraft's destination was "fortuitous." *Id.* at 1566. Further, the aircraft service company's advertisement in an aviation regional directory was not enough to show that the aircraft services company had purposely directed its activities at Florida. This was not enough "to provide contacts which comport with due process." *Id.*

Turbine Engine Specialists does not have the type of continuous and systematic contacts with Florida that the U.S. Supreme Court has found would subject it to general, personal jurisdiction in Florida. It is undisputed that Turbine Engine Specialists is a Texas corporation with its principal place of business in Texas. The U.S. Supreme Court has repeatedly stated that these two factors are the most important when considering general personal jurisdiction. This should essentially end the general jurisdiction analysis, and there are no "exceptional circumstances" in this case that would effectively render Turbine Engine Specialists at home in Florida.

Turbine Engine Specialists has never had offices, warehouses, hangars, or any physical facilities in Florida. It has no bank accounts in the State of Florida. It does not own or lease any property in the State of Florida. Turbine Engine Specialists has about 120 employees, and three of its employees are based in Florida. They perform mobile maintenance services at locations based on customer service needs. But as stated above, the Florida-based employees had no connection or role with the subject aircraft or the allegations forming the claims in this case.

Turbine Engine Specialists does not have continuous and systematic contacts with Florida that would make it generally amenable to suit in Florida. Plaintiff cannot establish general, personal jurisdiction over Turbine Engine Specialists and exercise of jurisdiction over same would violate the U.S. Constitution because it does not comport with notions of fair play and substantial justice. This Court should dismiss Turbine Engine Specialists from this lawsuit for lack of personal jurisdiction.

## IV. PLAINTIFF'S CLAIMS AGAINST GE ARE BARRED BY FEDERAL AND STATE STATUTES OF REPOSE

Plaintiff's claims against GE are barred by long-settled statutes of repose enacted specifically to prevent this kind of decades-later litigation against aviation manufacturers. Congress enacted GARA to draw a clear, bright-line end point to manufacturer liability for general aviation aircraft and their component parts, recognizing that after a product has been in service for many years—subject to multiple owners, operators, maintenance facilities, and regulatory oversight—it is neither fair nor legally sound to hold the original manufacturer perpetually responsible for a subsequent accident. GARA, therefore, provides an 18-year statute of repose for claims "arising out of an accident involving a general aviation aircraft" against aircraft and component manufacturers, like GE, measured from the date of first delivery. *See* Pub. L. No. 103-298, 108 Stat. 1552, §§ 2(a)(1); 3(3) (hereinafter "49 U.S.C. § 40101 notes"). Here, the aircraft

and its GE engines were first delivered in January 2005. The 18-year repose period expired in January 2023, more than a year before the February 2024 accident. Because this case falls outside GARA's repose period, Plaintiff's claims against GE must be dismissed.

Alternatively, Florida's 20-year statute of repose for aircraft used in commercial or contract carriage of passengers (Fla. Stat. § 95.031(b)(3)) bars Plaintiff's claims because the Subject Aircraft was delivered in January 2005, and this suit was filed in February 2026.

**A. GARA Bars Plaintiff's Claims**

"In 1994, the United States Congress enacted GARA in an effort to revitalize the general aviation industry following a serious decline in the manufacture and sale of general aviation aircraft by United States-based companies." *Farrar v. Textron Aviation, Inc.*, No. 127, 283, 2024 WL 5182913, at *6 (Ka. App. Ct. Dec. 20, 2024). "To accomplish this goal, GARA provides a statute of repose that acts to protect manufacturers from long-term liability in lawsuits arising from accidents involving aircraft or component parts that are more than 18 years old." *Id.* GARA's core purpose is to protect manufacturers from suit in their "capacity as a manufacturer" if the accident occurred outside the repose period. 49 U.S.C. § 40101 notes. The statute is more than an affirmative defense, it is "an explicit statutory right not to stand trial." *Farrar,* 2024 WL 5182913, at *6 (quoting *Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948, 951 (9th Cir. 2008)).

Under GARA, "no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred (1) after the applicable limitation period [18 years] beginning on – (A) the date of delivery of the aircraft to its first purchaser or lessee. . . ." *Inmon v. Air Tractor, Inc.*, 74 So.3d 534, 537–38 (Fla. 4th DCA

2011*)* (quoting 49 U.S.C. § 40101 notes). The applicable repose period is 18 years. *Id*. at 537.

GARA is "'a legal recognition that, after an extended period of time, a product has demonstrated its safety and quality'" and, therefore, "'it is not reasonable to hold a manufacturer legally responsible for an accident or injury occurring after that much time has elapsed.'" *Intact Ins. Co. v. Piper Aircraft Corp. Irrev. Tr*., Case No. 15-24792-CV, 2017 WL 3328225, at *3 (S.D. Fla. June 29, 2017) (quoting *Altseimer v. Bell Helicopter Textron, Inc*., 919 F. Supp. 340, 342 (E.D. Cal. 1996)). GARA bars each of Plaintiff's claims because they are brought against the GE Defendants in their capacity as manufacturers. *See* Compl. ¶¶ 91, 96, 103, 108, 156, 161.

**1. The Subject Aircraft is a General Aviation Aircraft**

A "general aviation aircraft" is defined as "any aircraft for which a type certificate or an airworthiness certificate has been issued by the Administrator of the Federal Aviation Administration, which, at the time such certificate was originally issued, had a maximum seating capacity of fewer than 20 *passengers*, and which was not, at the time of the accident, engaged in scheduled passenger-carrying operations as defined [in regulations in effect pursuant to 49 U.S.C. § 40101 et seq.], at the time of the accident." 49 U.S.C. § 40101 notes (emphasis added). The regulations define a "scheduled operation" as "any common carriage passenger-carrying operation for compensation or hire conducted by an air carrier or commercial operator for which the certificate holder or its representative offers in advance of the departure location, departure time, and arrival location." 14 C.F.R. § 110.2.

First, the Subject Aircraft is one for which there is both a type certificate, Ex. 1, Type Certificate A21EA, and an Airworthiness Certificate, Ex. 2, FAA Certified Aircraft Records at FAA-0000000462.

Second, the Subject Aircraft has a maximum seating capacity of fewer than 20 passengers. The Type Certificate specifies that the maximum occupancy is 22, "includ[ing] crew," and it

requires two pilots. Ex. 1, Type Certificate A21EA at 8. Standing alone, that might suggest that up to 20 of those seats could be used for passengers. But Federal Aviation Regulations impose an additional crew requirement once there are more than 19 passengers: "[n]o certificate holder may operate an aircraft that has a passenger seating configuration, excluding any pilot seat, of *more than 19* unless there is a flight attendant crewmember on board the aircraft." 14 C.F.R. § 135.107 (emphasis added); *see also* 14 C.F.R. § 91.533 ("No person may operate an airplane unless at least the following number of flight attendants are on board the airplane: (1) For airplanes having more than 19 but less than 51 passengers on board, one flight attendant."). Thus, if there were 20 passengers, one flight attendant crewmember would be required, and the total number of occupants would be 23 (two pilots, one flight attendant, and twenty passengers), which exceeds the type certificate maximum occupancy of 22.[4] As a matter of law, pursuant to the Type Certificate and Federal Aviation Regulations, the aircraft can never lawfully carry 20 passengers and its maximum passenger capacity is 19, *i.e.*, fewer than 20 passengers as required by GARA. [5]

Third, the Subject Aircraft was not engaged in "scheduled passenger-carrying operations,"

---

[4] Neither pilots nor flight attendants count as "passengers" for purposes of GARA. *See Croman Corp. v. Gen. Elec. Co.*, No. 2:05-cv-0575, 2006 WL 3201099, at *4 (E.D. Cal. Nov. 2, 2006) (applying GARA and explaining that a "passenger" is "any person riding in an aircraft but having no part in its operation." (internal citation omitted)).

[5] Notably, the Challenger is a Canadian-designed and manufactured aircraft and this limitation tracks the Canadian Type Certificate. The Canadian Type Certificate states the aircraft has a maximum occupancy of "22, including 3 crew members (1 Pilot, 1 Co-Pilot, 1 Flight Attendant)" and up to 19 passengers. Ex. 4, Canadian TCDS 9. As with the United States Type Certificate Data Sheet, the Canadian Type Certificate Data Sheet is publicly available and is a document whose accuracy cannot be reasonably questioned. *Available at* https://wwwapps.tc.gc.ca/Saf-Sec-Sur/2/nico-celn/c_d.aspx?lang=eng&aprv_num=A-131&ISU_NUM=62&START_DATE=2022-09-14&AUTH_DESC=&DESC=&FRGN_NUM=&aprv_type=TA&PARTS_NUM=&id_num=1189.

which are "passenger-carrying operations that are conducted in accordance with a published schedule which covers at least five round trips per week on at least one route between two or more points, includes dates or times (or both), and is openly advertised or otherwise made readily available to the general public." 14 C.F.R. § 135.261(b)(1). The Subject Aircraft was engaged in a "contracted charter flight," Compl. ¶ 81, not a scheduled passenger-carrying operation within the regulatory definition of the term.

Nor can Plaintiff bypass GARA's limitations by framing its claims against GE as a failure to warn of defects they allege were present in the initial design or manufacture. Compl. ¶¶ 93, 105, 158 (alleging GE "failed to warn of defects"). "[T]he GARA limitation period may not be circumvented simply by labeling the claim as one for failure to warn." *Theobald v. Piper Aircraft, Inc.*, 309 F. Supp. 3d 1253, 1266 (S.D. Fla. 2018); *see also Carson v. Heli-Tech, Inc.*, No. 2:01-cv-643, 2003 WL 22469919, at *4 (M.D. Fla. Sept. 25, 2003) ("[C]laims for a failure to warn about newly perceived problems with the original design, construction or manufacture of the lateral control rods and lateral control rod end fittings" are "barred because such a new perception does not re-start the statute of repose."). Permitting Plaintiff to proceed on repackaged failure-to-warn theories would undermine GARA's fundamental purpose by effectively extending the manufacturer's exposure indefinitely through artful pleading.

For these reasons, GARA's 18-year statute of repose applies. The statute of repose ran in January 2023, 18 years after its first delivery in 2005. Since the accident was in 2024, Plaintiff's claims are barred.

**2. The Fraud-on-the-FAA Exception to GARA Does Not Apply**

Plaintiff cannot avoid the application of GARA through the fraud-on-the-FAA exception. To "obtain the benefit of this exception, a claimant must plead and prove with specificity facts that establish that the defendant manufacturer knowingly misrepresented, concealed, or withheld from

the FAA information that must be reported that is "material and relevant to the performance or the maintenance or operation of such aircraft, or the component system, subassembly, or other part, that is causally related to the [claimant's alleged] harm." *Burton v. Twin Commander Aircraft LLC*, 254 P.3d 778, 779–80 (Wash. 2011) (quoting 49 U.S.C. § 40101, note § 2(b)(1)). Plaintiff's allegations that GE "failed to disclose [certain] information to the FAA," Compl. ¶ 43; *see also id.* ¶¶ 45–46, 60, fall far short.

Notably, "the complaint also ha[s] to conform to the particularity requirements of Federal Rule of Civil Procedure 9(b)," *McAuliffe v. Robinson Helicopter Co.*, 173 F.4th 1029 (9th Cir. 2026), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b). Here, Plaintiff's Complaint fails to sufficiently plead the fraud-on-the-FAA exception for three reasons.

First, Plaintiff fails to identify the "required information" that "must be reported" to the FAA that GE knowingly misrepresented, concealed or withheld. 49 U.S.C. § 40101, note § 2(b)(1); *Burton*, 254 P.3d at 779–80. While the Complaint conclusorily alleges that GE "failed to disclose" certain information to the FAA, Compl. ¶ 43, it does not identify a statute, regulation, or any other authority that would have mandated any such disclosure. *See Nowicki v. Cessna Aircraft Co.*, 69 So. 3d 406, 410–11 (Fla. 4th DCA 2011) (affirming dismissal where plaintiff "failed to cite any statute or regulation to support her position that Cessna violated a reporting requirement").

Second, Plaintiff fails to identify *any* specific misrepresentation to the FAA, let alone the "time, place, and specific content" of such misrepresentation. *See McAuliffe*, 173 F.4th at 1036 (requiring "particularized allegations" about the time, place, and content). The Complaint's allegations that GE "failed to disclose [certain] information to the FAA . . . in a timely and complete manner," Compl. ¶ 43, and "failed to inform the FAA of the full scope of the corrosion

hazard," Compl. ¶ 45, lack the requisite particularity. Specifically, Plaintiff does not identify *any* misrepresentation or withholding of required information, never mind, time or place.

Third, Plaintiff further fails to establish that GE misrepresented or omitted any required information *knowingly*. "Critically, knowledge as a state of mind applies to each of these forms of keeping information from the FAA; that is, 'knowingly' modifies each of the words 'misrepresented,' 'concealed,' and 'withheld' in the exception." *Burton*, 254 P.3d at 779–80. Plaintiff alleges that "[u]pon information and belief, . . . [GE] has actual and constructive knowledge that the engines on the Accident Aircraft were defective and dangerous and undertook affirmative steps to conceal the defect" (Compl. ¶ 44). Such allegations based on "information and belief" are insufficient to plead a claim for fraud. *See, e.g.*, *Great Fla. Bank v. Countrywide Home Loans, Inc.*, No. 10-22124-CIV, 2011 WL 382588, at *5 (S.D. Fla. Feb. 3, 2011) ("When Rule 9(b) applies, "pleadings generally cannot be based on information and belief"). Because Plaintiff has not alleged a specific and knowing misrepresentation of "required information" to the FAA, the complaint must be dismissed.

**B. <u>Florida's Statute of Repose Bars Plaintiff's Product Liability Claims</u>**

Even if GARA did not bar Plaintiff's claims, Florida's product liability statute of repose independently requires dismissal. For "[a]ircraft used in commercial or contract carrying of passengers," Florida law provides that "no action for products liability may be brought more than 20 years after delivery of the product to its first purchaser or lessor who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product." Fla. Stat. §§ 95.031(b)(1), (b)(3). As established above, the Subject Aircraft was first delivered to lessee Suzuki in January 2005. This action was filed in February 2026—after the 20-year statute of repose—and is therefore time-barred under Florida law.

## V. CONCLUSION

For the foregoing reasons, TES and GE respectfully request that the Court dismiss Plaintiff's claims against them with prejudice.

## LOCAL RULE 7.1 CONFERRAL CERTIFICATION

Pursuant to Local Rule 7.1, I, Christopher B. Smith, hereby certifies that counsel for Turbine Engine Specialists, Inc. has conferred with Plaintiff's counsel regarding the relief requested in this motion. Plaintiff has opposed the requested relief.

Dated: August 11, 2026

*/s/ Ian M. Ross*

Ian M. Ross
Sidley Austin LLP
830 Brickell Plaza
Miami, FL 33131
(305) 391-5218
iross@sidley.com

*Attorney for Defendants GE Aerospace and GE Engine Services*

*/s/ Christopher B. Smith*

Christopher B. Smith
Fowler White Burnett
Citigroup Center
201 South Biscayne Boulevard, 20th Floor
Miami, FL 33131
(305) 789-9211
csmith@fowler-white.com

*Attorney for Defendant Turbine Engine Specialists, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing document was served via the Court's CM/ECF filing system to all recipients registered to receive notices of electronic filings generated by CM/ECF for this case.

*/s/ Ian M. Ross*
Ian M. Ross